Our sixth case of the morning is World Outreach v. City of Chicago. Mr. Mauck for the appellant. Good morning. Good morning, Your Honors. May it please the Court, John Mauck on behalf of World Outreach Conference Center. As you've read the briefs in this case, it probably sounds like there's two different cases going on. One about the right to use the property for a community center and for housing for homeless men and the right to rent the property out as a community center for religious worship. The lower court decided to cut the Lodestar award for fees for this 12 years of litigation by 70%. Mr. Mauck, you aren't challenging the district court's modification of the Lodestar amount before she applied the 70% cut, are you? No. Okay. Everybody's agreed on the Lodestar. There's no argument about the rates or the particular hours other than a large section of the hours that were expended, as the judge estimated, on trying to collect damages. Unfortunately, I think the judge conflated many of the civil rights cases where they're seeking only damages. And if you don't get all the damages you want, you can get cut despite the strong presumption that the Lodestar is not to be reduced. That's what the Supreme Court has said. Although we have conflicting priorities, there's an abuse of discretion standard also. So those two standards of review do conflict somewhat. But the question is, was this case really about damages? The Katrina issue didn't come up until after the property had been bought, after the city had rezoned the property to manufacturing in a hostile rezoning, and refused to grant a permit for the 168 units to be used for the housing of these homeless men. And that required three motions on our behalf, and then the city finally relented. The trial judge said the case was over, essentially, in 2007, when the city yielded and granted a license. However, a few days after they granted that license, the city filed another administrative complaint against World Outreach, saying you need a special use permit. And a month later, they filed a motion saying a special use permit may be required. So the battle went on. Just because they let the 168 units be used, we were still seeking equitable relief. And if we're seeking equitable relief and obtaining it, then the lodestar should not be cut, because that's the law. In document 222-8, I think that's in 2010, the city wrote, after they're allowed the community center, they said, but you can't have worship there. No worship allowed. Not even renting. And in oral arguments in 2015, which is quoted in our brief, a council for the city said, you can't have a church worshiping at this community center, not even rental. And of course, it completely undermines the point of a community center. Community centers are used for all kinds of activities. Clubs and lodges, senior activities, swimming, basketball, all of which occur here. It's a community center, not a church, but the city has refused to allow that use, and even to this day, I think, believes that we need a special use permit. It was this court in 2015 that put to rest all of those things, saying, you are allowed to continue as nonconforming use any of the community center uses that have gone on in the past through the YMCA, the prior owner. So it was at that point that we became prevailing parties. It was not in 2007. The city fought vigorously to say we were not prevailing parties, and it was this court that put that matter to rest in 2015 and allowed us to move towards settlement. Likewise, the district court said this is a case that ought to have settled, and we should have settled, and how you can settle when you have an intransigent, tough, tenacious opponent like the city of Chicago that doesn't want to let its zoning code be attacked or the aldermanic privileges be reduced. Judge Bauer, I want you to know, and we've looked at your cases over the years and opinions, and we've had cases with you. We filed this in part in state court because of those prior opinions. We thought this is a land use case, and there's a lot of land use issues, and of course we raised our federal accounts, and it was the city that removed this case to federal court, and then we continued it. It was the city of Chicago that cross-appealed after Judge Lefko entered summary judgment in about 2012 and 2013, it was the city of Chicago that cross-appealed her summary judgment ruling and said her ruling was wrong. This court upheld Judge Lefko on that point, but apparently lost in the translation was the need to keep on fighting and keep on trying to protect this church and the equitable relief that we got gradually. We got the right to house the men after about two years, and then we got the recognition of the legal non-conforming use by this court in 2015, and I hope implicitly the right to use it as a community center includes the right to rent it out for worship services, which the YMCA did and our church did on many cases. Counselor, you're into your rebuttal time. I don't know if you want to save time for rebuttal. Yes. I just want to say one more thing. It was the city that challenged the constitutionality of RLUIPA in 2014, and that also required legal services to defend and uphold the constitutionality of RLUIPA. Thank you. Thank you, Counsel. Mr. Halpert? May it please the court? The district court properly exercised its discretion to reduce World Outreach's requested attorneys' fees. Both this court and the district court recognize that since World Outreach received its license in 2007, this case has been exclusively about the pursuit of damages. World Outreach claimed $2.4 million in damages, plus attorneys' fees, to settle the case and did not reduce its damages claim below seven figures until the eve of trial, when it suddenly reduced its claim to $360,000. Ultimately, World Outreach accepted only $40,000 to settle the case, and then it requested $1.9 million in fees. The district court awarded $467,000 in fees, which was still 12 times the damages recovery. Nothing about that award was an abuse of discretion. An award of attorney's fees is reviewed under a highly deferential abuse of discretion standard because the district court is in the best position to make those determinations. And this is especially true in a case like this one of only limited success, because the determination necessarily requires imprecise determinations of what fees were reasonable. In cases like Motanes and Summerfield, this court has routinely affirmed the reduction of fees based on a district court's superior understanding of the litigation. And here, the district court applied the same analysis as in those prior cases and concluded that World Outreach's $40,000 recovery was a dismal failure of the seven-figure damages claims that had driven the litigation for years. This court and the district court both also recognized that the largest portion of World Outreach's alleged damages involved its claim for $1.5 million it purportedly lost from being unable to house Hurricane Katrina refugees. In fact, in its summary judgment decision, this court decided that that claim was so central to the case that it needed to address the evidentiary weaknesses of the claim to provide guidance for that claim on remand for a trial. And yet World Outreach does not even address the failure of that claim anywhere in either its opening or its reply brief. Instead, World Outreach repeatedly claims that the city engaged in a scorched earth defense, but it was World Outreach's demand for seven-figure damages plus attorney's fees until the eve of trial that ensured no reasonable settlement could occur earlier and also required the city to continue to defend its positions. World Outreach also wrongly asserts that it is entitled to or has a right to attorney's fees, but is entitled only to a reasonable fee. And here, the district court properly determined that an award of $1.5 million in fees for a $40,000 recovery on claims that had been claimed for up to $2.4 million was just not reasonable. World Outreach also misrepresents the city's position regarding its claimed legal nonconforming uses, which World Outreach claims prolonged the litigation. From the time that the city issued World Outreach's license in 2007, the city recognized World Outreach as a property that the YMCA had previously used. In the litigation, the city defended its past actions based on World Outreach's failure at the time it applied for the license to prove to the zoning administrator that it intended to use the property for the same purposes as the YMCA, and the city only later challenged World Outreach's claim to a right to use the property for church services as a legal nonconforming use because there was no evidence that the YMCA had ever used the property for that purpose. And unless this court has any further questions, for all of these reasons, the city would respectfully ask this court to affirm the judgment below the Congress. Thank you, Counsel. Mr. Malkoff? On the question of whether World Outreach needs to prove that it intended to comply with the same uses as the YMCA, Judge Posner was very explicit in his opinion. He said, first of all, you don't need to prove how— Judge Posner was speaking for the court, just as the rest of us are. Yes, okay. His opinion doesn't mean a damn thing unless he's got two people with him. Thank you, Your Honor. The court said the city has volumes of material showing how the YMCA was used, and that it was used as a community center over a 50- or 60-year period. And for them to then require World Outreach Conference Center to show plans or do other things to prove what it intended to do didn't make sense. That's not how you prove a nonconforming use. You say, I'm going to live in this house, even though it's zoned manufacturing, because it's a legal nonconforming use. You have to show it's always been used for a residence, but you don't apply for a permit to continue living in the house. If you open a shoe store there, you lose your nonconforming use status. But we said we're going to use it as a community center. If we weren't using it, the city would have been right on our back. They had five inspections. They had the task force out there. They were harassing us. And so we think that that was not necessary to prove and that this court has so ruled. Thank you, Your Honor. Thank you, counsel. The case is taken under advisement.